[Criminal No. 557.   Filed May 24, 1924.]

[226 Pac. 199.]

## WILLIAM E. ACKER, Appellant, v. STATE, Respondent.

1. HOMICIDE—PROOF OF KNIFE WOUNDS HELD PROPER THOUGH INFORMATION CHARGED DEATH BY BLOWS.—In prosecution for murder charged to have been produced by blows upon head, evidence of knife wounds found on deceased's body *held* not only proper, but to help rather than hurt accused.

2. CRIMINAL LAW—THAT TESTIMONY CONTRADICTED OTHER EVIDENCE IN PART HELD NOT GROUND FOR STRIKING ALL OF IT.—That witness' testimony concerning statement made to him and others by accused, of latter's version of homicide, contradicted in some respects other evidence introduced, was not ground for striking out all of the testimony.

3. CRIMINAL LAW—FAILURE TO OBJECT TO TESTIMONY IN NATURE OF CONCLUSIONS HELD TO PRECLUDE CONSIDERATION OF ALLEGED ERROR ON APPEAL. — The objection that some of the witness' testimony concerning statements made by accused lapsed into witness' conclusions drawn from such statements could not be considered on appeal, in the absence of an objection to that effect at the trial.

4. CRIMINAL LAW—STENOGRAPHIC REPORT OF ACCUSED'S ADMISSIONS HELD IMPROPERLY EXCLUDED TO ACCUSED'S ADVANTAGE.—An offer by the state to introduce in evidence admissions of accused, which were taken down in shorthand and transcribed and the correctness of which was not disputed, *held* improperly refused to accused's advantage.

---

1. See 14 R. C. L. 206.
2. See 26 R. C. L. 1055.
3. See 26 R. C. L. 1044.

5. CRIMINAL LAW—OBJECTION TO TESTIMONY, BASED ON PREVIOUS EX-
AMINATION AND DISMISSAL OF WITNESS, HELD MADE TOO LATE.—
An objection that witness had been previously examined and dis-
missed *held* too late, when made after witness had been examined
after being recalled.

6. CRIMINAL LAW — WITNESSES — OBJECTION TO TESTIMONY OF RE-
CALLED WITNESS GOES TO DISCRETION OF TRIAL COURT WHOSE
RULING IS CONCLUSIVE. — Objection to testimony on ground that
witness had previously been examined and dismissed appeals only
to the discretion of the trial court, whose ruling is conclusive.

7. CRIMINAL LAW—MOTION TO STRIKE TESTIMONY AS ENTIRETY HELD
MADE TOO LATE.—Where no motion to strike testimony of a wit-
ness was made until he had been fully examined and cross-
examined by appellant, it was then too late to strike the testi-
mony as an entirety, as contradicting other testimony for state,
or as not giving defendant's statements in due form of direct
quotation.

8. CRIMINAL LAW—GUILT OF ACCESSORY IS BASED ON AID IN COMMIT-
TING CRIME.—The guilt of an accessory exists in aiding the com-
mission of a crime.

9. CRIMINAL LAW—CRIME IN WHICH INTENT IS ELEMENT CANNOT BE
AIDED INNOCENTLY.—A crime in which intent is an element cannot
be aided innocently.

10. HOMICIDE — INSTRUCTION DEFINING OFFENSE OF ACCOMPLICE IN
ALTERNATIVE RATHER THAN CONJUNCTIVE FORM HELD NOT REVER-
SIBLE ERROR—"AID."—In a prosecution of accused as accomplice in
a homicide, instruction stating guilt could be established either by
proof of aiding or abetting or assisting, *held* not to require rever-
sal for using alternative rather than conjunctive form; aid given
by accomplice implying guilty knowledge, and a definite aiding
in the crime itself.

11. HOMICIDE—INSTRUCTION AS TO ACCOMPLICE HELD NOT REVERSIBLE
ERROR FOR USING ALTERNATIVE FORM, EVIDENCE SHOWING AC-
CUSED WAS PRINCIPAL.—In a prosecution of accused as accomplice
an instruction which stated the offense could be established by
proof of aiding or abetting or assisting *held* not to require re-

5.   See 28 R. C. L. 450.

6.   See 28 R. C. L. 597.

7.   See 26 R. C. L. 1057.

8.   See 1 R. C. L. 144.

9.   See 1 R. C. L. 146.

10.  See 14 R. C. L. 780.

versal for using alternative, where the evidence showed accused was not merely an aider, abettor or assistant, but a principal and an active participant.

APPEAL for a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

Mr. John A. Ellis and Mr. T. J. Bryne, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

LYMAN, J.—Acker was charged jointly with one other, and tried separately and convicted of murder in the first degree, accomplished upon one Iver Enge. Enge was the owner of an automobile in which with Acker as a passenger he drove from Phoenix to Prescott, where Enge introduced him to one Berge as a former acquaintance. Acker and Berge talked together of the possibility of killing Enge and taking his automobile, and a day or two later persuaded Enge to drive them into the country in order that they might find a way to kill him. On the way out, Enge at the suggestion of Acker surrendered the driving of the car to him. When they had reached a point seven or eight miles out from Prescott, Acker stopped the car, and suggested that they all alight. After some conversation among the three, Berge stepped behind Enge, and struck him with a blackjack, knocking him down. As he fell he appealed to Acker to help him. Berge continued to beat Enge until the latter was supposed to be dead. Acker and Berge then dragged the body out to one side of the road over a declivity. After they had returned to the automobile, Enge was

See 16 C. J. 119, 874, 882; 17 C. J. 70, 359; 30 C. J. 134, 394; 40 Cyc. 2468.

seen to stir, and attempt to rise on his hands and knees. Acker then took the bludgeon and returned to Enge, and after beating him further, again returned to the automobile. As they watched Enge, he was seen to move again, and Acker returned a second time, and with a knife stabbed Enge twice. Acker and Berge then drove away in Enge's machine, in which was a roll of bedding belonging to Enge, Acker doing the driving.

They drove to Phoenix, and rented a shack, and made some repairs upon the stolen automobile. In the course of a day or two they learned through a newspaper that Enge had been found alive. Thereupon they fled with the stolen car, leaving Enge's bedding and the blackjack in the shack they had occupied. After proceeding as far as Maricopa, they were unable to drive the car further, and abandoned it there on the desert, Acker going to Los Angeles, where he was arrested not long afterwards going under the name of Doyle, and having in his possession Enge's bank deposit book showing a substantial deposit to the credit of Enge.

Acker made at various times statements purported to describe the killing of Enge by Berge and himself, in some of which Berge was represented as being the leading and most active factor. Prior to his arrest, he told an acquaintance substantially the same account of the killing of Enge, except by that account he admitted a more active part in the actual slaying, including beating Enge with the blackjack and stabbing him with a knife; otherwise the two accounts did not substantially differ.

Enge was discovered in an unconscious condition by a woodchopper, and the fact reported to the sheriff's office at Prescott. Some days later Enge partially recovered consciousness, and was able even to move about with his nurse, but never recovered fully his mental faculties, nor the power of speech,

but remained in a dazed condition until the end. His death, which occurred about a month later, was found to be due to the blows received upon his head.

Acker left a plain trail behind him, and his guilt was established both by circumstantial evidence, and by his own statements. None of this evidence was disputed.

The defense offered no evidence excepting the testimony of the nurse, who cared for Enge. His evidence did not tend to contradict any of the testimony introduced by the state, and it is impossible to discover for what purpose it was offered. It related merely to the state of Enge's health during the time he was under the witness' care.

Appellant assigns a number of errors which he says were committed in the trial of this cause. Evidence of the knife wounds found on the body of Enge was objected to, because death was alleged in the information to have been produced by blows upon the head. The evidence of the knife wounds appeared in the testimony of the condition in which Enge was found. The county attorney very properly gave to the jury all the evidence which seemed to throw any light upon the means by which Enge came to his end, and the circumstances and conditions in which he was found. Had he not done so, the defense would undoubtedly have offered the same evidence, and used it as a means of throwing doubt upon the cause of Enge's death, and would very likely have charged the county attorney with bad faith in withholding the evidence. The introduction of this testimony by the state itself undoubtedly took from the defense some force which would have been given to it had it come from the defense instead. The introduction of the evidence was not only proper, but it tended to help rather than hurt the defendant. This assignment of error is frivolous.

Defendant moved to strike out all of the testimony of witness Montgomery, who undertook to relate the statement made to him and others by Acker of his version of the killing, and his motion is based upon the ground that the statement contradicts in some respects other evidence which had been introduced. This was, of course, no ground for striking out all of the testimony, even though some of it was obnoxious to such an objection.

But the error here assigned for not striking out the testimony of Montgomery is based upon an entirely different ground, that is that Montgomery's testimony was not in all parts in the form of a direct quotation, but sometimes lapsed into what appeared to be the witness' conclusions drawn from Acker's statements. The testimony of Montgomery was not more obnoxious to this objection than most testimony of that sort, and in the absence of objection made to it when given will not be considered here.

The admissions to which Montgomery testified were taken down in shorthand and transcribed, and offered in evidence by the state. This offer was improperly refused, to the advantage of the defendant. Had the objection been made in good faith to the testimony of Montgomery upon any of the grounds assigned, defendant would have verified the correctness of Montgomery's testimony by the stenographic report, the correctness of which was not disputed.

There was also a motion to strike out all of the testimony of the witness Ragsdale, based upon a variety of grounds; that he had been examined as a witness earlier in the trial, and dismissed from the stand. Such an objection was too late after the witness had been examined. Had it been made when first recalled, it would have appealed only to the discretion of the court, whose ruling would have been conclusive.

Another reason assigned why it should be stricken out, was that it contradicted testimony of some other witnesses for the state, reference being made to some of the self-serving statements made by Acker in his account of the killing of Enge. But the error assigned in this court is based not upon any of these grounds, but upon the assumption that Ragsdale's testimony, like Montgomery's, was not always in form a direct quotation. No motion was made whatever to strike out the testimony of Ragsdale until he had been fully examined and cross-examined by defendant. It was then too late to strike the testimony out as an entirety upon any of the grounds assigned either in the trial court or here. An examination of Ragsdale's testimony fails to disclose any serious violations of the most exacting rules of evidence.

The court after instructing the jury very fully upon the law relating to homicide and the various degrees of guilt included in the charge, gave this instruction:

"The jury are instructed that if the evidence convinces you beyond a reasonable doubt that Iver Enge was killed in the manner and form as charged in the information, and that the defendant, William E. Acker, was present and in any way or manner aided, abetted or assisted in such killing, then it is your duty to find him guilty."

This is said not to have been a correct statement of the law, because it states that guilt may be established either by proof of aiding or abetting or assisting, when in law his guilt depends upon the combined aiding, abetting and assisting. Misdirected refinement has been sometimes indulged in by the courts, making an undue distinction between the meaning of these various words. Undoubtedly if there is any distinction to be made in the effect of any of these terms, so that one is not substantially the synonym of the other, then it would be error to state the offense in the alternative rather than conjunctive. Undoubtedly one might give physical aid

to a project without in any way abetting the plan or purpose upon which the project depended; but the guilt of an accessory does not depend upon aiding in some act which is essentially innocent, but exists in aiding the commission of a crime which by the very terms used implies guilty knowledge, at least as applied to homicide.

A crime in which intent is an element cannot be aided innocently. Some acts which conspire to effect the crime might be; but the aid given by an accomplice is by the very terms used definitely aiding, not in some innocent act, but in the crime itself. The criticism of the construction complained of assumes that Acker might have aided "in the killing of Enge in the manner and form as charged in the information," and yet have been innocent, a proposition which in itself is preposterous.

However, the most convincing answer to the objection to this instruction is found in the state of the evidence, from which, however viewed, Acker could not be considered as merely an aider, abettor or assistant, but a principal, and an active participant in the agencies of death. By his own statement he wielded the deadly bludgeon and put the final quietus upon the struggling Enge. It is true that in some of his self-serving declarations he attempted to place himself in the role of minor responsibility, but at that he fails wholly to establish his position as merely an aider, abettor or assistant. In every statement which he made concerning the killing, he admits that he knew the fatal purpose for which Enge was taken upon his last ride, and that he actively and knowingly promoted it. The circumstantial evidence shows that two men were engaged in dragging the body of Enge down the bank. *People* v. *Fredoni,* 12 Cal. App. 685, 108 Pac. 663.

The appellant had a fair trial. Not only were all of his rights protected, but the court in any case of uncertainty ruled in favor of the appellant.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.