499 P.2d 756

**STATE of Arizona, Appellee,**

v.

**Nina LaFLEUR, Appellant.**

**No. I CA–CR 385.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 27, 1972.

Rehearing Denied Aug. 23, 1972.

Review Denied Oct. 10, 1972.

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

EUBANK, Judge.

The defendant was charged by information with two counts of being an accessory after the fact of a murder, in violation of A.R.S. § 13–141. She was tried before a jury, convicted on both counts and sentenced by the court to serve concurrent sentences of one to three years in prison on each count. Defendant appeals from the judgment of conviction, the sentences, from a denial of her motion for a new trial, and seeks review of two questions:

1. Was there a proper preliminary determination as to the voluntariness of inculpatory statements made by defendant to a police officer?

2. Was the defendant subjected to a double punishment in violation of A.R.S. § 13–1641 where the evidence showed

two principals guilty of a primary crime but only a single crime?

On the evening of the 23rd of June, 1970, Mark Foust and David Boshears, who lived at the defendant's home in Phoenix, hitchhiked a ride to the Verde River with one Mario Richardson. Later that evening Foust shot and killed Richardson. Foust and Boshears then drove Richardson's car back to the defendant's home, arriving there in the early morning hours of June 24. They awakened the defendant and requested her to follow them in her car. They abandoned the Richardson car some distance from defendant's home and returned with defendant in her car to her home to spend the night. During the return ride they informed the defendant that they had killed the owner of the car. Foust and Boshears stayed at the defendant's home off and on during the next few weeks. Some two weeks after the murder, the defendant told her daughter and son-in-law about the incident with Foust and Boshears and that they had admitted murdering Richardson.

On the afternoon of July 28, the defendant was approached at her place of employment by two sheriff's deputies. After the deputies identified themselves and before they began questioning the defendant, she was read the Miranda[1] warnings from a standard police "rights card" and was asked if she understood them. She said that she did and signed the rights card. This card was placed in evidence. The defendant then told the officers about her relationship with Foust and Boshears and their stated perpetration of the murder. Defendant's arrest as an accessory followed three days later. At the trial a voluntariness hearing was held outside of the hearing of the jury to determine whether defendant's statement to the sheriff's deputies would be admitted into evidence. Following the hearing the trial judge held that the statements made to the officers were admissible, having been voluntarily made pursuant to a knowing and intelligent

waiver of defendant's rights to counsel and to remain silent.

Defendant contends that the trial court's voluntariness ruling was erroneous in that the testimony of the officer at the voluntariness hearing did not show that she had been informed of all her rights, particularly of the right to have counsel present during the questioning; but she concedes that the officer's testimony before the jury established the full Miranda warnings. The officer testified at the voluntariness hearing and from recollection that he had informed the defendant of:

" . . . the right to remain silent, that anything she might say could and most probably would be used against her in a court of law; if she did not have an attorney, she could have an attorney appointed for her. I also advised her that at any time during the conversation if she did waive her right, she could refuse to answer any questions, and she could also request an attorney. I also asked her if she understood the rights, and she stated she did. . . ."

Moreover, the officer's testimony clearly shows that he actually read to Mrs. LaFleur from a "rights card"; that he had her sign the card indicating that she understood the rights enumerated thereon; and that the card was in the possession of the sheriff's office at the time of the voluntariness hearing and would be produced as soon as possible. Over defense objection, the trial court accepted the card into evidence pending its production at the trial. The signed card was then produced for the officer's testimony before the jury and he testified that all the rights set out thereon had been read to the defendant, including the right to counsel during questioning. Thus the voluntariness of her statements was established prior to their introduction into evidence before the jury.

There is no contention that the statements introduced into evidence were not truthful or voluntary. Defendant merely maintains that the trial judge should not

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

have admitted the Miranda rights card into evidence prior to its actual production at the trial and that the voluntariness hearing was therefore improperly conducted to her prejudice.

It is clear that the duty to initially determine the voluntariness of a statement or confession rests with the court, and that this determination must be made prior to introduction of the inculpatory evidence at the trial. *See* State v. Branch, 108 Ariz. 351, 498 P.2d 218 (filed June 16, 1972); State v. Costello, 97 Ariz. 220, 399 P.2d 119 (1965). Since the Miranda "rights card" was introduced into evidence at the trial, and no attack is made on its veracity, we hold that no prejudicial error resulted to defendant from the procedure employed by the trial court.

The defendant's second question involves the Arizona prevention of double punishment statute, A.R.S. § 13–1641, which reads:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

Defendant was charged in each of the two counts of the information with a violation of A.R.S. § 13–141, as amended, which reads as follows:

"All persons who, after full knowledge that a felony has been committed, conceal it from the magistrate, or harbor and protect the person or persons charged or convicted or whom they have reason to believe committed a felony, are accessories."

Count I charged, in part, that she "harbored and protected David Boshears, whom she had reason to believe committed a felony, to-wit, murder". Count II charged her with similarly harboring and protecting Mark Foust.

Defendant contends that the words "person or persons" as used in § 13–141, supra, "clearly contemplates by its language that the defendant commits but a single crime by harboring more than one person."

Since Foust and Boshears were both principals to the crime of murdering Mario Richardson, the defendant argues that she committed only the single crime of harboring the "persons" (Foust and Boshears) who committed the murder.

Prior to its amendment in 1969, A.R.S. § 13–141 read as follows:

"All persons who, after full knowledge that a felony has been committed, conceal it from the magistrate, or harbor and protect the person charged with or convicted thereof, are accessories."

A comparison of the statute before and after amendment shows that the word "persons" was added, together with the phrase "whom they have reason to believe committed a felony", by the 1969 amendment.[2] The 1969 amendment was part of a comprehensive piece of legislation which amended 16 generally unrelated criminal statutes. Our search reveals no legislative history regarding the addition of the word "persons" to the statute and, of course, barring an ambiguity, the intention of the legislature as expressed in the amendment must govern our determination. Neither party suggests that "persons" is ambiguous, nor do we. The intention expressed to us by the addition of the word is not as suggested by the defendant, but refers instead to those crimes involving the concert of action by multiple parties such as Conspiracy (A.R.S. § 13–331 et seq.), Dueling (A.R.S. § 13–381 et seq.), Incest (A.R.S. § 13–471), Rout (A.R.S. § 13–632), and Unlawful Assembly (A.R.S. § 13–633), among others. In our opinion "persons" was not intended to limit the state to charging the defendant with one count of being an accessory where, as in the case at bar, she harbored and protected two murderers of the same person.

2. Session Laws 1969, Chapter 133, § 2.

**28**

Returning now to A.R.S § 13–1641, the double punishment prohibition, defendant argues that there was only one crime committed, the one murder, and that when the elements of that murder are removed from either count, as they must be under the identical elements test of State v. Tinghitella, 108 Ariz. 1, 491 P.2d 834 (1971), only one accessory count in the information will stand. In support of this argument, defendant relies heavily on the statement in Acker v. State, 26 Ariz. 372, 226 P. 199 (1924) that:

". . . [T]he guilt of an accessory . . . exists in aiding the commission of a crime. . . ." (26 Ariz. at 379, 226 P. at 201)

In Acker, however, the defendant was tried and convicted as an accomplice. It is clear that the Supreme Court was speaking of the common law accessory *before* the fact who, by statute in Arizona, is a "person concerned in the commission of a crime" and is "prosecuted, tried and punished" as a principal. A.R.S. § 13–140.

Under A.R.S. § 13–141, as amended, supra, a felony must in fact have been committed and the person or persons assisted must be guilty of that felony. In the case at bar, however, it is clear that two felonies were committed, first, by Foust when he murdered Richardson, and second by Boshears when he became an accomplice —although there was only one murder victim. Both, or either, Foust and Boshears could have been informed against by the State. Both Foust and Boshears were assisted by the defendant, but her acts of assistance to each of them were separate and independent. The fact that they were both together at the same time and place during her assistance is no more compelling than the argument that there was only one robbery because all of the victims were robbed at the same place and time. *See* State v. Andrews, 106 Ariz. 372, 476 P.2d 673 (1970). A similar argument was made and rejected by the Supreme Court recently in State v. Gantt, 108 Ariz. 92, 492 P.2d 1199 (1972).

We hold that the defendant was not subjected to double punishment in violation of A.R.S. § 13–1641.

Judgment is affirmed.

HAIRE, C. J., and JACOBSON, J., concur.