[Civil No. 2732. Filed July 18, 1928.]

[269 Pac. 73.]

H. S. McCLUSKEY, Plaintiff, v. WILLIAM E. HUNTER, Defendant.

Messrs. Struckmeyer, Jennings & Strouss, for Plaintiff.

Messrs. Flanigan & Fields, for Defendant.

McALISTER, J.—On May 1, 1928, this case was referred to the superior court of Maricopa county

for the purpose of having that court find the facts necessary to determine these two ultimate facts: First, whether plaintiff, H. S. McCluskey, failed for three consecutive months prior to January 20, 1928, to perform the duties of the office of industrial commissioner when not prevented from doing so by sickness or absence from the state by permission of the legislature; and, second, whether he accepted the office of Colorado River commissioner, 33 Ariz. 513, 266 Pac. 18. Pursuant to this order that court, Judge JOSEPH S. JENCKES presiding, made its findings and has filed them here.

Both plaintiff and defendant have moved for judgment, each supporting his motion by argument, and claiming that the facts found are in his favor. An examination of the findings discloses that the court found the evidentiary facts, but did not find either of the two ultimate facts mentioned, though a knowledge of these, or at least one of them, is necessary before a determination of the case can be had; hence this court has been compelled to examine the findings and ascertain what they show relative thereto.

Upon the question whether plaintiff accepted membership on the Colorado River commission the findings in substance are:

That on April 6, 1927, plaintiff was notified by the Governor of Arizona that he had that day appointed him a member of the Colorado River commission under the provisions of Substitute House Bill No. 15.

That following the receipt of this notification and on the same day, without receiving any further commission or taking or filing an oath of office, he met in Phoenix with the other seven members of this commission and entered upon the performance of the duties as such commissioner.

That between then and January 17, 1928, he attended at least seventeen meetings of the Colorado River commission at which business was transacted by the members of the commission as the Colorado River commission created in chapter 37, Session Laws of 1927, and in the further performance of his duties as a member of this commission made the following trips to the places and upon the dates indicated, the time consumed therein being about three months: April 9 to 14, Flagstaff and Lee's Ferry; April 25 to May 4, California and Nevada; May 28, to 30, Imperial Valley; June 4 to 7, Pasadena, California; June 11 to 27, Denver, Cheyenne, and Salt Lake City; July 22 to 24, Prescott; August 17 to September 4, Denver; September 16 to October 8, Denver; October 9 to 18, Los Angeles and Riverside; November 14 to 19, Needles; December 2 to 9, San Francisco; December 10 to 16, San Francisco; December 20 to January ——, Washington City.

That independently of the time spent at the meetings of the Colorado River commission and on the trips referred to plaintiff spent "a considerable portion of his time" advising and conferring with many citizens of the state and others in connection with the problems of the Colorado River.

That he filed claims with the state auditor of Arizona for his hotel bills, traveling and incidental expenses incurred at the meetings of the Colorado River commission and on each of these trips upon the $100,000 appropriated by chapter 37, Session Laws of 1927, for this purpose, and received warrants upon this fund in payment of the same.

There are also findings relative to the work plaintiff performed on this problem prior to his appointment on the Colorado River commission, to the study he has given the question, and to the wide information he has acquired regarding it. Certainly no one will question the fact that he has given this matter

much study and that he is especially well-informed on it, but the extent of his information or the length of time he has devoted to its study are wholly immaterial upon the question whether he accepted membership on the Colorado River commission; this being the ultimate fact this court must know before judgment based on this phase of the case may be rendered.

From the foregoing findings it is perfectly plain that the plaintiff accepted the office of Colorado River commissioner. Attending the meetings of the commission, making numerous trips to points outside the state in furtherance of the purposes of the act creating that commission, giving "a considerable portion of his time" to advising and conferring with many citizens of the state and others, and filing with the state auditor upon the $100,000 appropriated for this purpose claims for his hotel bills, traveling expenses, and incidentals incurred at the meetings and on the trips, and receiving warrants in payment thereof, can lead to no other result. It is equally clear also that the effect of this acceptance is that he vacated, *ipso facto,* the office of industrial commissioner, since section 3, chapter 83, Session Laws of 1925, prohibits a member of the Industrial Commission from holding "any office of trust or profit" or from engaging in "any occupation or business other than his duties as such commissioner."

"It is well settled by an overwhelming array of authority," to repeat what this court said in *Campbell* v. *Hunt,* 18 Ariz. 442, 162 Pac. 882, "that the holding of one office does not render the incumbent ineligible to another, but that the *acceptance of the second office, when prohibited, ipso facto absolutely vacates the first office.*" It is immaterial whether it is an office of trust which, as here used, is one without remuneration, or an office of profit which is one with remuneration; the vacancy arises just as effectively upon the acceptance of the one as the

other, the reasons being that frequently offices are incompatible and in many cases offices of trust require time which a person in office would be compelled to give at the expense of the position he already holds.

Upon the other ultimate fact to be ascertained—whether plaintiff ceased to discharge the duties of the office of industrial commissioner for three consecutive months prior to January 20, 1928, when not prevented by sickness or absence from the state by permission of the legislature—the findings disclose the following:

That from the date of his appointment on June 12, 1926, until some time in October of that year he did not perform any of the duties of industrial commissioner, but thereafter was in a measure active in the discharge of them.

That in December, 1926, the Industrial Commission moved its quarters from the third to the fourth floor of the Capitol building, and that on or after December 30, 1926, plaintiff, at the request of the Governor, occupied room 202 next to the Governor's office, and advised with him on budget legislation to be presented to the legislature and on matters concerning the Colorado River question.

That he very infrequently went to the office set aside for him by the Industrial Commission on the fourth floor of the Capitol but spent most of his time when in this building in room 202.

That during the year 1927 he did not attend any of the 59 meetings of the Industrial Commission of which minutes were kept, except one held on January 8, 1927, and that during this year he did not sign an award made by the commission, though during this period it made at least 12,000 awards which were signed by the other two commissioners.

That he never conferred with Commissioner Sims after January 8, 1927, concerning the affairs of the

Industrial Commission, but did on several occasions confer with Commissioner Clingan over the telephone or in person concerning cases coming before the commission.

That at various times he conferred with dissatisfied claimants who had not received such awards as they thought they should have received and in some instances conferred with the claimants prior to, at or about the time they had filed applications with the commission for relief.

That all the evidence of actual participation of plaintiff "in matters pending before the Industrial Commission which culminated in any representation made to the commission by him as to what action should be taken" relates to thirteen matters, and in only seven of these did he take any action after his appointment on the Colorado River commission on April 6, 1927. That his work in these seven matters consisted of the following: In case of Nick Trtica, he requested the commission on November 4, 1927, to reopen the case; the case of Charles Sharp was reopened at his request after the rejection of the original claim; in case of Clarence Burgess, he referred a letter received by him from Federal Mutual Life Company to the Industrial Commission without recommendation, and wrote a Mr. Wilson of that company that the award was not in his opinion adequate; in case of Fay Boswald, he was notified of a hearing to be had on November 14th pursuant to his request that he be so notified; in case of Norman Cole, plaintiff brought the matter to the attention of Mr. Clingan; in case of Hardy Long, plaintiff was instrumental in getting a rehearing and an amended award; in case of Albert Boshe, he was instrumental in securing a greater award than the original.

There is also a finding that on December 9, 1927, plaintiff wrote the secretary of the Industrial Com-

mission, requesting that all cases involving settlements for permanent total and permanent partial disabilities and all rejected cases be sent to him before findings and awards were made; but the evidence fails to disclose whether this was done. These further general findings were made: That during the entire year of 1927 plaintiff performed from time to time, as shown by the foregoing findings, duties required of him as a member of the Industrial Commission and gave precedence to the business of the Industrial Commission which was submitted to him for action; that while he was most actively engaged in Colorado River matters he was working from twelve to eighteen hours a day on Industrial Commission work and Colorado River problems combined, and that the "work performed by the plaintiff with reference to the Colorado River matter did not materially interfere with his duties as a member of the Industrial Commission, and plaintiff had no intention of accepting any appointment which would so interfere."

The finding that throughout the year 1927 he performed from time to time the duties of industrial commissioner, as shown by the facts theretofore found, limits his work for the year to that portion of the thirteen matters referred to which occurred during that period and for the last eight months of the year to the seven of these specially mentioned as taking place during that time, though the findings show no act performed by him in any of these cases during April, May, June or July, 1927. There is no evidence of any other matters being submitted to him for action and we take it that this was the only work of the commission to which he gave precedence. Hence it appears that within the last eight months of 1927 he did these things: Requested that two cases be reopened, aided in getting a rehearing and an amended award in two cases, brought one matter to the attention of the commission, was noti-

fied of a hearing in one case at his request, forwarded to the commission a letter received by him in one matter, and wrote the insurance company his view of the award made therein. Such being true it is apparent that practically all of the work of twelve or eighteen hours a day devoted to Industrial Commission matters and to Colorado River matters combined was given to the latter; and in view of the ninety days or more spent outside the state of Arizona on the Colorado River problem, the number of commission meetings attended in the state, and the time consumed advising and conferring with citizens of the state and others in reference thereto, we are unable to understand upon what the finding, that the work performed by plaintiff on the Colorado River problem did not materially interfere with his duties as a member of the Industrial Commission, was based. The only theory upon which this could be true (and such was not the basis of the findings) is that plaintiff spent no time at all on Industrial Commission work and the time given to the other line of endeavor could not necessarily have interfered therewith.

The fact to which he himself testified, that from the day of his appointment on June 12, 1926, to some time in October of the same year, he performed none of the duties of industrial commissioner, had the effect of creating a vacancy in the office held by him at the expiration of three months from June 12, 1926. Par. 221, subd. 7, Rev. Stats. 1913. From that date on he was only an industrial commissioner *de facto*. "Although from public necessity, and to prevent mischief," said the court in *Gosman* v. *State,* 106 Ind. 203, 6 N. E. 349, in discussing the status of an officer who still functioned though guilty of acts rendering his office vacant, "he might have remained, as to strangers, an officer *de facto,* the office as to the officer himself was void." Inasmuch, however, as the order declaring a vacancy for failure to discharge his

duties specifies a period of more than four months next preceding January 17, 1928, without stating how much more, and the answer alleges that such failure dated from January 8, 1927, the ultimate fact which the findings on this phase of the case lead to, namely, that plaintiff ceased to discharge the duties of the office for three consecutive months when not prevented by sickness or absence from the state without permission of the legislature, is not based upon this particular failure.

That plaintiff did so fail between January 8, 1927, and January 17, 1928, is the only construction that may be placed upon these facts: He attended in 1927 only one meeting of the Industrial Commission of which minutes were kept, namely, on January 8; he did not sign one award of the commission during the entire year, though 12,000 awards were signed by the other two commissioners during this time, and the chief functions of the commission are to hold hearings and make awards; he occupied room 202 on the second floor of the Capitol after December 20, 1926, instead of the office on the fourth floor thereof set aside by the commission for him, and very infrequently went to the latter; from the time of his appointment in June, 1926, until January 17, 1928, he took part in only thirteen matters pending before the commission and seven of these were after he had been appointed on the Colorado River commission on April 6, 1927. His work in these particular cases consisted merely of writing a few letters, holding several conversations with Commissioner Clingan, either over the telephone or in person, and perhaps, though it does not clearly appear, with some of the claimants themselves. Such acts do not avoid the effect of the statute because they do not constitute such a performance of the duties of an office requiring its occupant to give it all his time as would justify him in saying that he did not cease

to discharge these duties for three consecutive months. An officer who gives substantially all his time for more than a year to other work than that of his office and only occasionally does some small act in his line of duty or gives a short period of time thereto is not in a position to say that he did not cease to discharge the duties of his office within the meaning of paragraph 221, subdivision 7, *supra,* and, consequently, that he did not vacate it. If a member of this court, for instance, should remove his quarters to another floor of the Capitol, and for more than a year, when not prevented by sickness, take practically no part in the work of the court—that is, attend none of the oral arguments, examine none of the briefs, prepare none of the opinions, and sign none of those prepared by other members of the court—but give substantially all his time to some other line of endeavor, even though it be something of great moment to the state, and only occasionally talk to a member of the court about some case before it, or point out in a few instances where the court was in error after judgment has been rendered, no one would contend for a moment that his office would not become vacant because of his failure for three consecutive months to perform its duties. Speaking to a member of the court in the manner suggested or writing an occasional letter about some matter before the court would have no effect upon the three months' limitation in the face of the fact that he performed practically none of the real work of the court.

Counsel argues that, though plaintiff toiled from twelve to eighteen hours a day in the service of the state, he stands accused of failure to perform the duties of his office, and that, having given unstintedly of his labor when the state stood in dire need thereof, he should not now be stigmatized as an unfaithful servant and his labor go unrewarded. There is no

question but that plaintiff did devote much time and labor to the problems connected with the Colorado River and that he rendered the state most valuable service in that capacity, but the law provides no monetary reward therefor; hence he must rest content with the gratitude of the people for faithful service, because the fact that no salary is attached to the office of Colorado River commissioner does not justify this court in holding that the $5,000 a year which the law says a member of the Industrial Commission shall receive for performing the duties of that office shall be taken therefrom and used to pay for services in no way connected with the purposes for which that commission was created. The only way in which a commissioner who is not ill or absent from the state by permission of the legislature may become entitled to this salary is to do the work for which it was intended. It cannot be treated as a general appropriation to be applied where the exigencies of the state may suggest any more than could the salary of any other officer in the state.

It appearing from the findings that plaintiff vacated the office of industrial commissioner both by ceasing to discharge the duties thereof for a period of three consecutive months prior to January 20, 1928, when not prevented from doing so by sickness or absence from the state by permission of the legislature, and also by accepting membership on the Colorado River commission, it is the judgment of the court that the appointment of the defendant herein to the position of industrial commissioner was legal, and that he is the righful occupant thereof, and, as such, entitled to its emoluments. It is further adjudged that plaintiff take nothing by this action and that defendant recover his costs.

ROSS, C. J., and LOCKWOOD, J., concur.