[Civil No. 3727.  Filed January 20, 1936.]

[53 Pac. (2d) 854.]

JAMES R. MOORE, Plaintiff, v. ANA FROH-MILLER, as Auditor of the State of Arizona, Defendant.

Mr. Blaine B. Shimmel and Mr. Elias M. Romley, for Plaintiff.

Mrs. Ana Frohmiller, Defendant, *in pro. per.*

ROSS, J.—This is an original proceeding in *mandamus* by James R. Moore against Ana Frohmiller, as auditor of the state of Arizona, to compel her to audit and allow his duly verified claim for $5,000 as part payment of his fee or compensation as per contract with the Attorney General and the Colorado River Commission, to assist the Attorney General of the state in some litigation now pending in the Supreme Court of the United States involving the state's rights in the waters of the Colorado River, and for

services in any other suits or actions that may be hereafter instituted for that purpose.

It appears from the defendant's answer to the complaint and her brief that the grounds of her refusal to audit and allow the claim were threefold:

"1. Plaintiff's contract of employment is void because it extends beyond the terms of the appointing officers and purports to bind their successors.

"2. Plaintiff must be paid a salary and nothing more.

"3. Plaintiff is a public officer and as such cannot be paid a lump sum fee as compensation."

The legislature created the Colorado River Commission; gave it very full and complete power over the state's rights in the waters of the Colorado River; and authorized it to do any and all things advisable and necessary to secure and protect such rights. Chapter 3, Laws 1929, Regular Session. The pertinent part of said chapter is found in section 4 thereof, reading as follows:

"Section 4. This commission is hereby authorized and empowered: . . .

"2. To institute and prosecute, or appear and defend, in the name of, and in behalf of the state of Arizona such actions, suits or legal proceedings as may be necessary or may be deemed advisable to protect the rights and interests of citizens and property owners of the state of Arizona, or the rights of said state of Arizona, or the rights of said state in the Colorado river or its tributaries. The attorney general of the state shall be the attorney in any such actions or proceedings, and the commission with the attorney general shall have the right to employ such special attorneys as assistants to the attorney general, and other experts as it may be necessary to carry out the purposes of this commission or any of the duties imposed upon it."

Pursuant to the powers so granted and conferred upon it, the commission on December 17, 1935, passed

the following resolution, offering employment to the plaintiff:

"Be it resolved that the Colorado River Commission, with the Attorney General, employ James R. Moore and Charles L. Strouss as special attorneys, as assistants to the Attorney General in the institution, prosecution and defense of all actions, suits or legal proceedings, now pending or to be hereafter instituted, as may be necessary or may be deemed advisable to protect the rights and interests of the citizens and property owners of the State of Arizona or the rights of said state in the Colorado River or its tributaries, and as may be necessary to carry out the purposes of this Commission or any duties imposed upon it; and that the compensation of said special attorneys is hereby fixed as follows:

"James R. Moore to be paid $15,000, of which said sum $5,000 shall be paid forthwith and $10,000 shall be paid upon the entry of final judgment or decree in that cause now pending in the Supreme Court of the United States wherein the State of Arizona is plaintiff and the states of California, Colorado, Nevada, New Mexico, Utah and Wyoming are defendants, by which an equitable apportionment of the waters of the Colorado River among the plaintiff and the defendants is sought, or upon the sooner termination of his said employment other than by his death or resignation; plus a yearly compensation of $12,000, and $25 per day while engaged in the performance of said duties outside the State of Arizona, payable semi-monthly.

"Charles L. Strouss to be paid $6,000 per year, plus $25 per day while engaged in the performance of said duties outside of the State of Arizona, payable semi-monthly.

"Each of said special attorneys shall further be allowed and reimbursed for all necessary traveling and maintenance expenses and disbursements made in and about said work; provided, however, that their hotel and personal maintenance expenses shall not exceed $5 per day.

"The employment of said special attorneys shall continue until terminated by the joint action of the

Colorado River Commission and the Attorney General.

"Said special attorneys shall have no authority to exercise any portion of the State's sovereign power or the constitutional or statutory powers of the Attorney General, or to bind the State by any stipulation or act whatsoever."

The plaintiff, who had been a Special Assistant Attorney General of the state from the month of January, 1935, on the following day, to wit, December 18th, resigned, and on said day his resignation was accepted. Thereafter, on December 18th, he was formally tendered employment by the Colorado River Commission and the Attorney General in accordance with the terms of the resolution, which employment he on that day accepted. Before the contract employing plaintiff was entered into, the commission had caused to be instituted a suit in the United States Supreme Court against the states of California, Colorado, Nevada, New Mexico, Utah, and Wyoming, for the purpose of securing, if possible, an equitable division of the waters of the Colorado River among said states and to protect Arizona's rights therein.

██ Under a contract of employment, very similar in its terms and provisions to the present one, with the Colorado River Commission and the Attorney General, plaintiff assisted the Attorney General in bringing such suit. The validity of his contract of employment was before us in the case of *State of Arizona ex rel. Colorado River Commission of Arizona & John L. Sullivan, as Attorney General,* v. *Ana Frohmiller, as Auditor of the State of Arizona,* 46 Ariz. 413, 52 Pac. (2d) 483, 486 (decided November 25, 1935), and we held the facts showed plaintiff to be a public officer, and as such that he could not be paid a *fee* for his services, and could only be compensated by a fixed and definite salary, for

a fixed and definite term, under section 17 of article 22 of the Constitution, and sustained the auditor in her refusal to audit and allow plaintiff's claim for services under such contract. In the course of our opinion we noted that the difference between the Attorney General and his assistants, on the one hand, and an attorney employed to assist such officers, was that the former represented the state and exercised some of its sovereign powers and functions, whereas the latter was a mere employee, to advise and assist the Attorney General, with no power to represent the state. In that case we said:

"It is very true that the employment by a public officer of a person does not always make him a deputy of such officer, and that the commission and Attorney General, by virtue of the provisions of chapter 3, *supra,* might well have employed special counsel to advise in the pending litigation without necessarily constituting such counsel officers of the state. . . .

"It may be said that the commission and Attorney General, following the views expressed herein, have the right to pay Mr. Moore a retainer by expressly limiting his employment and authority to that of a special counsel, as described in this opinion, instead of that of an Assistant Attorney General. This is undoubtedly true, but that is not a matter for our consideration."

It would seem that what we said therein practically disposes of defendant's points 2 and 3. But it is said the above statement is *dictum.* If so, it is obviously correct.

It appears from the allegations of the complaint that the plaintiff, before accepting the contract for his legal services from the Colorado River Commission and the Attorney General, resigned from the office of Special Assistant Attorney General and that such resignation was accepted. As we understand it, the acts of resignation and acceptance had the effect

of terminating Moore's official position. Sections 93, 94, Rev. Code 1928. After his resignation and its acceptance, he was open to employment by the Colorado River Commission and the Attorney General as an assistant *to* the Attorney General. He no longer had any official relation to the state or the state's attorney, and, like any other attorney, was privileged to accept the employment by the commission and Attorney General.

The question of his fitness and qualifications, and the amount and terms of payment of his compensation, is left entirely with the Colorado River Commission acting in conjunction with the Attorney General. These officers, having determined the necessity of employing a special attorney as an assistant to the Attorney General, had complete power to select as such assistant any attorney they saw fit, providing he was a citizen of the United States. Section 54, Id.

If plaintiff's engagement gave him the status of a public officer, he would have secured his position by *appointment* and not by contract He would have to possess the qualifications for public office fixed by the statute (§ 54, *supra*), that is, be twenty-one years of age, a citizen of the United States and of the state of Arizona, and take the official oath (§ 63, Id.). These are not necessary qualifications to be eligible to employment as an assistant to the Attorney General and have not heretofore been considered to be by the Colorado River Commission or the Attorney General. On at least two occasions the commission and Attorney General have hired and paid nonresident attorneys to assist the Attorney General in litigation over the waters of the Colorado river.

■■ The other reason assigned by defendant for not auditing and allowing plaintiff's claim is that:

"Plaintiff's contract of employment is void because it extends beyond the terms of the appointing officers and purports to bind their successors."

The statute creating the Colorado River Commission empowered it with the Attorney General to employ an attorney or attorneys to assist the Attorney General in litigation concerning the state's rights to the waters of the Colorado River, and that is exactly what was done when plaintiff was employed. The commission and Attorney General carried out the mandate of the law. If the law is valid, and it is not questioned, the contract is valid. At all events, we think the contract is binding until someone in position to raise the question of its validity, because it extends beyond the terms of the contracting officers, does so. The successors to the contracting officers might be well pleased with plaintiff's services and choose to ratify his contract and continue his employment. This they certainly could do.

The part of the contract here sought to be enforced is capable of being performed during the terms of the contracting officers, and the objection could not apply to it. If and when other terms of the contract become the subject of a lawsuit, it will then be time to pass upon them.

The reasons given by defendant for not auditing and allowing the claim appearing to be without legal justification, the alternative writ of *mandamus* is made peremptory.

LOCKWOOD, C. J., and McALISTER, J., concur.