[Civil No. 4124. Filed April 22, 1940.]

[101 Pac. (2d) 449.]

ROY McCARTHY, Appellant, v. THE STATE OF ARIZONA ex Rel. RICHARD F. HARLESS, County Attorney of Maricopa County, Arizona, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Appellee.

Messrs. Struckmeyer & Flynn, for Appellee.

UDALL, Superior Judge.—This action was one of *quo warranto,* instituted by the State of Arizona at the relation of the County Attorney of Maricopa County to try the title of Roy McCarthy, defendant

in the lower court and hereinafter referred to as appellant, to the office of member of the Board of Supervisors of Maricopa county. The appeal seeks a review of the judgment of the superior court, entered on plaintiff's motion for judgment on the pleadings, whereby appellant was ousted and excluded from the office of member of said Board of Supervisors.

The factual situation as shown by the pleadings is as follows: Prior to June 23, 1939, C. Warren Peterson, John A. Foote, and George Frye were the duly elected and qualified members of the Board of Supervisors of Maricopa county, and appellant Roy McCarthy was a citizen member of the Maricopa County Board of Social Security and Public Welfare, hereinafter referred to as the welfare board, he having been appointed as such pursuant to section 10, chapter 69, Laws of the Regular Session, 1937, and furthermore during all the times here involved Supervisor Foote was also a member of the welfare board, both serving by appointment of the Board of Supervisors.

Supervisor C. Warren Peterson on June 22, 1939, tendered his resignation as a member of said board and on the following day, at a regularly called meeting, his resignation was accepted by the remaining two members. On this same day, June 23, 1939, pursuant to the provisions of section 768, Revised Code of Arizona 1928, the remaining two supervisors, John A. Foote and George Frye, together with the County Recorder Roger G. Laveen convened for the purpose of appointing a supervisor for the unexpired term of Mr. Peterson. The appellant Roy McCarthy was nominated by Supervisor Foote and Supervisor Frye nominated one Floyd Marler. By a vote of Supervisor Foote and Recorder Laveen, McCarthy was appointed supervisor, and on the same date he took and filed the oath and bond required by law, and continued

to fulfill the duties of supervisor until ousted by the judgment of the trial court.

On June 23, 1939, the appellant filed his resignation as a member of the welfare board with said last-named board, and at a meeting held on that date, with members John A. Foote and R. M. Jamison present, and with appellant absent, the resignation was unanimously accepted. This resignation was not filed with the Board of Supervisors of Maricopa county until June 24, 1939, and no affirmative action on said resignation was ever taken thereafter by the remaining two supervisors; but at a special meeting held on June 26, 1939, with Supervisors Foote and Frye, and also appellant McCarthy being present, the clerk presented appellant's resignation and same was spread upon the minutes of that meeting.

On July 3, 1939, being the regular monthly meeting date fixed by law, section 770, Revised Code of Arizona 1928, the Board of Supervisors convened, with Supervisor Foote and appellant McCarthy present and member Frye absent, and appointed one E. A. Stanford to succeed appellant as a member of the welfare board, and said Stanford immediately qualified and has ever since fulfilled the duties thereof. On July 3, 1939, Supervisor Foote and County Recorder Laveen again convened for the purpose of selecting a member of the Board of Supervisors to fill the vacancy created by Peterson's resignation and they, with Supervisor Frye still absent, again purported to appoint appellant as Supervisor of Maricopa county, the latter, following this re-appointment, forthwith took the oath of office and filed a new bond.

Under the facts recited above, it is the contention of the State of Arizona, appellee herein, that the appellant was ineligible for appointment to the Board of Supervisors on either of the dates he was purportedly

appointed, for the reason that he was still a member of the welfare board, his resignation as such not having been lawfully accepted, and that his purported appointment to that office by Supervisor Foote and County Recorder Laveen was without authority of law and consequently null and void. The appellant, on the other hand, maintains (a) that at the time of his appointment as supervisor he had resigned from the welfare board and his resignation had been impliedly accepted, (b) or that in any event by qualifying as supervisor he *ipso facto* vacated his membership on the welfare board, and that his appointment was, therefore, valid.

There are but four assignments of error, which will be considered as seems best without reference to their numerical order.

The statute creating county boards of supervisors and prescribing their qualifications, is section 766, Revised Code of Arizona 1928, reading as follows:

"There shall be in each county a board of supervisors, to consist of three members who shall be qualified electors of their supervisorial district, and shall be elected at a general election. They shall enter upon their duties on the first day of January subsequent to their election, and shall hold office for two years. *No person holding any other county or precinct office is eligible to the office of supervisor.*" (Italics ours.)

This section standing alone clearly makes any person holding any other county or precinct office ineligible to the office of supervisor. The functions of the office are such that it becomes readily apparent why this last proviso was incorporated therein.

The thirteenth legislature of the State of Arizona enacted a law providing for the creation of State and County Boards of Social Security and Public Welfare, together with an elaborate code governing their operations. This act is designated as chapter 69,

Session Laws of 1937. Section 10 of that chapter creates the County Welfare Board and defines its duties. It reads in part:

"In each county there shall be a County Board of Social Security and Public Welfare, consisting of one member of the board of supervisors and two citizen members, residents of different communities of the county, appointed by the county board of supervisors."

This enactment permitted a supervisor to sit on the welfare board, and, while this court is not ordinarily concerned with the reasons prompting legislation, it is evident from a study of chapter 69, *supra,* that the legislature considered there was not necessarily any incompatibility between these two offices, as the county board is under the direct supervision and control of the state board. Subd. (b), sec. 10, *supra,* and *Welch v. State Board of Social Security and Welfare,* 53 Ariz. 167, 87 Pac. (2d) 109, 110.

The appellant first takes the position that it does not appear from the record or the law applicable thereto that he was disqualified from being a county supervisor because at the time of his appointment he was also a member of the welfare board, his argument being that a special statute, chapter 69, *supra,* which created county welfare boards and provides that one supervisor shall become a member of the welfare board, supersedes the general statute, section 766, *supra,* which makes any person who holds any other county or precinct office ineligible to the office of supervisor.

■ It seems to us that both enactments are special in their nature, rather than general, but in any event if there is any conflict between the two statutes the more recent one must prevail.

■ We are not unmindful that statutes imposing qualifications upon the right to hold office should receive a liberal construction as it impairs the right of the people to select officers of their own choosing.

Furthermore, disqualifications provided by the legislature are construed strictly and will not be extended to cases not clearly within their scope, and the rule is also that there is a presumption in favor of the eligibility of one who has been elected or appointed to public office. 46 C. J. 937. The eligibility qualification prescribed by section 766, *supra,* for one to hold the office of supervisor is statutory and not constitutional and, hence, can be changed at will by the legislature; furthermore this section must be construed *in pari materia* with other statutes and later enactments. But with all of these rules to guide us, can it be fairly said because the legislature in enacting section 10, chapter 69, *supra,* provided that a member of the Board of Supervisors, to be selected by them, should sit on the welfare board, that without any repeal or amendment whatsoever of section 766, *supra,* it necessarily follows that a citizen member of the welfare board, without lawfully resigning, can be appointed to the office of supervisor? We think not, as the argument is unsound, it is obviously a *non sequitur.* Equally unsound is appellant's argument that more than one member of the Board of Supervisors might at any given time lawfully sit on the welfare board. This would nullify the clear provision that such board is to be composed of two citizen members and one member of the Board of Supervisors, section 10, chapter 69, *supra.*

We hold that there is no conflict between these two statutes and that the legislature in enacting chapter 69, *supra,* did not remove the eligibility restriction for office of supervisor imposed by section 766, *supra,* and this is true even though the two offices are not incompatible; the real test is not one of incompatibility but whether the purported appointment of appellant contravenes the ineligibility provisions of section 766, *supra.*

In a further effort to avoid the alleged ineligibility of appellant to hold the office of supervisor under the circumstances heretofore set forth, the appellant argues (a) that the office of member of the County Welfare Board is not a public office. (b) But if it be held to be a public office that it is a state office rather than a county office, for, as he contends, the County Welfare Board is nothing but an agency of the state department.

■ The County Welfare Board performs an important public duty and membership on same constitutes a high public trust. To say that this is not an office minimizes the definition of that term and subordinates this important board to the category of mere employment without compensation. Sec. 10, chapter 69, *supra*. A public office is none the less such though the exercise of its sovereign powers, or the performance of its duties, is interlocked with or dependent in part upon another office. In view of the many duties imposed upon the County Welfare Board it seems irrefutable that such board is more than a mere adjunct of the state board and certainly their duties pertain rather to an office than to mere employment.

■ This assignment is without merit, as we hold that membership on the County Welfare Board is an office within the meaning of that term as defined in the leading case in this jurisdiction of *Winsor* v. *Hunt*, 29 Ariz. 504, 243 Pac. 407, and furthermore that it is a county rather than a state office.

■ Appellant's third assignment of error asserts that the Board of Supervisors of Maricopa county did accept appellant's resignation as a member of the welfare board and appointed a successor to fill his unexpired term. The proposition of law urged in support thereof, to-wit: ''It is not necessary for a resignation from office to be formally accepted in writing, such acceptance can be implied from circumstances,'' cor-

rectly states the law as an abstract proposition, but the real question is whether the record bears out his contention that his resignation was either formally or impliedly accepted. The rule governing mode of acceptance is stated as follows:

"Therefore, to be effective the resignation must be accepted by competent authority, either in terms or by something tantamount to an acceptance, such as the appointment of a successor." 22 R. C. L. 557, sec. 260. See, also, text statement, 46 C. J., 980, sec. 134.

The Board of Supervisors, composed at that time of members Foote and Frye, was the only body authorized by law to accept this resignation for the reason that it is the tribunal having authority to appoint his successor. Sec. 93 Rev. Code Ariz. 1928; *Rockingham County* v. *Luten Bridge Co.*, (4 Cir.) 35 Fed. (2d) 301, 66 A. L. R. 735; 22 R. C. L. 558, sec. 261. Therefore, appellant's resignation submitted to the County Welfare Board and its purported acceptance thereof was a nullity. *State ex rel.* v. *Board of Education,* 108 Kan. 101, 193 Pac. 1074.

The purported action taken July 3, 1939, by Supervisor Foote and appellant, with Supervisor Frye absent, in appointing E. A. Stanford to the welfare board would be ineffective to constitute an implied acceptance of appellant's resignation. Certainly if appellant's appointment was invalid because of his ineligibility, no act of his as a *de facto* officer could validate his own invalid appointment. That would be equivalent to pulling one's self out of the mire by his own bootstraps. A different situation would exist had Supervisor Frye attended this meeting and voted with Supervisor Foote for Stanford's appointment, as that would have been tantamount to an implied acceptance of appellant's resignation under the rule above stated. We are not impressed with appellant's argument that because the Board of Supervisors did not reject, deny

or refuse his resignation at the regularly convened meeting held on June 26, 1939, that this constituted in effect an implied acceptance thereof, and that there was no necessity of any affirmative action being taken thereon.

Section 94, Revised Code of Arizona 1928, provides:

"An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term: . . . his resignation, and the lawful acceptance thereof."

The words "and the lawful acceptance thereof" were added with the enactment of chapter 25, Laws of 1912, incorporated in section 221 of the 1913 Code, and now section 94, *supra*. Prior to this amendment an office became vacant simply by the resignation of the office holder; under the statute as it now exists the office does not become vacant until the resignation is lawfully accepted. We have so held this to be the law in several cases: *Cragin* v. *Frohmiller*, 43 Ariz. 251, 30 Pac. (2d) 247, *Moore* v. *Frohmiller*, 47 Ariz. 69, 53 Pac. (2d) 854, *Campbell* v. *Hunt*, 18 Ariz. 442, 162 Pac. 882, and *McCluskey* v. *Hunter*, 33 Ariz. 513, 266 Pac. 18 and Id., 34 Ariz. 189, 269 Pac. 73. See, also, annotation in 95 A. L. R. 216.

The record here does not show either an actual or implied acceptance of appellant's resignation from the welfare board.

Finally the appellant urges that if he was disqualified from holding the two offices of supervisor and member of the welfare board he *ipso facto* vacated his first office upon accepting the second. In the case of *Campbell* v. *Hunt, supra,* we adopted the common-law rule (18 Ariz. 442, 162 Pac. 886):

"If a person while occupying one office accepts another *incompatible* with the first, he *ipso facto* vacates the first office, and his title thereto is thereby terminated, without any other act or proceeding. . . .

"It is well settled by an overwhelming array of authority that the holding of one office does not render the incumbent ineligible to another, but that the acceptance of the second office, *when prohibited, ipso facto* absolutely vacates the first office." (Italics ours.)

Campbell was elected Governor while holding the office of tax commissioner, and without resigning, he qualified as Governor; Hunt refused to vacate the office and *mandamus* was brought to oust him. Neither by the Constitution nor by statute was a person holding any other office thereby disqualified to become Governor. However, section 4822 Revised Statutes 1913, provided that a member of the tax commission shall devote his entire time to the duties of his office and "shall not hold any other position of trust or profit," and we held that this special provision, the legal effect of which was to create a vacancy on the tax commission when Campbell qualified as Governor, must control as against the general provision requiring a lawful acceptance of a resignation to create a vacancy. Sec. 220, Rev. Stats. 1913 (now sec. 93, Rev. Code Ariz. 1928). The case turned in part upon this point, and we then properly invoked the common-law rule, *supra,* to install Campbell in the Governor's office.

In the later cases of *McCluskey* v. *Hunter, supra,* the acting Governor had declared a vacancy because (a) McCluskey, as Industrial Commissioner, had "ceased to discharge the duties of his office for a period of three consecutive months," (b) "that he had accepted an appointment to another office, to-wit: membership on the Colorado River Commission." Chap. 37, Laws of 1927, sec. 3. The act creating the Industrial Commission prohibits the members of said commission from holding any other office of trust or profit. Chap. 83, Laws of 1925, sec. 3. In the first McCluskey case we held that "this provision does not, however, render

members of this commission *ineligible* to any other office of trust or profit but has the effect of rendering vacant the office of industrial commissioner when the person holding that position accepts another office, even though it be merely an office of trust." 266 Pac. 25.

When the appellant attempts to invoke the rule laid down in the Campbell and McCluskey cases, *supra,* he fails to recognize the distinction between a constitutional or statutory provision against double office holding, and a statute, such as we have here, relating to the "eligibility" of a person already in office to be elected or appointed to another office.

Furthermore, the facts in the case at bar do not bring this case within the rule heretofore set forth, that governed the disposition of both the Campbell and Mc-Cluskey cases, *supra.* Some of the distinctions are (a) there is no incompatibility, either under the common law or by statute, in the holding of the two offices involved herein; this being a matter of ineligibility rather than the incompatibility existing in the Campbell and McCluskey cases; (b) the inhibition against holding another office was prescribed in the statutes creating the first office in the two cases last referred to; here it is a matter of ineligibility for appointment to the second office with no prohibition against holding another office in the statute creating the welfare board; (c) appellant never accepted the office of supervisor for the reason that he could not accept something which was not lawfully given. He must have vacated the first office by resignation and its lawful acceptance before he was eligible to the second office, and this we have shown he did not do; (d) in the McCluskey case there was a vacancy by operation of law, making unnecessary a resignation; in the Campbell case we held that the general statute governing resignation must give way to the special statute prescribing the require-

ments incidental to holding the office of tax commissioner, section 4822, *supra.* Here there was no vacancy in the first office (welfare board) because there was no valid acceptance of the resignation, and the statute creating the welfare board, section 10, chapter 69, *supra,* has no inhibitory provisions similar to section 4822, *supra,* hence the vacancy law, section 94, *supra,* would govern.

A Georgia *quo warranto* case, entitled *McWilliams* v. *Neal,* that is practically on all fours both as to factual situation and statutory provisions will be found in 130 Ga. 733, 61 S. E. 721, 14 Ann. Cas. 626; there respondent, a member of the Board of Education, was elected to the legislature and qualified as such. Georgia's Constitution, article III, section 4, paragraph 7, provided "that no person holding [any] office . . . shall have a seat in either house." The Supreme Court, in disposing of the case adversely to the respondent, said in part:

"The paragraph of the Constitution from which the above is taken relates to the ineligibility of members of the General Assembly. It does not merely render membership in that body incompatible and inconsistent with the holding of any of the other offices mentioned, and not falling within the exception contained in the paragraph quoted, nor is it a mere provision against the holding of two offices at the same time; but it is, in effect, a provision that a person holding one of the other offices referred to in that paragraph shall be ineligible to membership in either house of the General Assembly, and, that being the case, the effect upon the person holding at the time of his election to the General Assembly another state office is quite different from what it would have been, had the provision merely been against the holding of both offices, for in the latter case the effect would have been to oust the person elected to the General Assembly, and taking his seat by virtue of such election, from the office previously held.

*"But, where ineligibility to the second office results from the holding of a prior office, then the result is that the election to the second office is void, and his right to hold the other remains unaffected. 'It is frequently declared that persons holding one office shall be ineligible to election to another, either generally or of a certain kind. These provisions being held to incapacitate the incumbent of the first office to election to the second, it follows that any attempted election to the second is void, and that if, by color of it, he attempt to hold the second office, he will be removed from it. It is thus the second office which is vacated, instead of the first. . . .* Where, however, it is the holding of the two offices at the same time which is forbidden by the Constitution or the statutes, a statutory incompatibility is created similar in its effect to that of the common law, and, as in the case of the latter, it is well settled that the acceptance of a second office of the kind prohibited operates *ipso facto* to absolutely vacate the first. . . . *'But the rule does not apply, of course, when the officer is made ineligible to hold the second office.' "* (Italics ours.)

See also annotation in 100 A. L. R., page 1163.

We adopt the reasoning and rule of this case and consider it determinative of this assignment.

Appellant McCarthy, as a citizen member of the County Welfare Board held a county office which he had not vacated at the time of his purported appointment as supervisor, and consequently, under section 766, *supra*, he was ineligible, i. e., not capable of holding the office of supervisor and the trial court properly ousted him.

Judgment affirmed.

ROSS, C. J., and McALISTER, J., concur.

LOCKWOOD, J., having disqualified himself, the Honorable LEVI S. UDALL, Judge of the Superior Court of Apache County, was called to sit in his stead.