## IN THE MATTER OF THE IMPEACHMENT OF RICHARD M. KAGEYAMA.

No. 2833.

ARGUED SEPTEMBER 13, 1950.                    DECIDED OCTOBER 11, 1950.

LE BARON AND TOWSE, JJ., AND CIRCUIT JUDGE
MOORE SUBSTITUTING FOR KEMP, C. J., RETIRED.

OPINION OF THE COURT BY LE BARON, J.

This is a motion to dismiss the petition brought by the city and county attorney of Honolulu for the removal of the respondent from his office as supervisor of the City and County of Honolulu. The motion challenges not only the authority of the city and county attorney to institute removal proceedings against the respondent, purportedly exercised under section 604 of Revised Laws of Hawaii 1945, but the jurisdiction of this court to entertain such proceedings so instituted.

The petition in the light of existing statutes alleges in substance that the respondent was duly elected to the office

of supervisor at the general election on November 9, 1948, and took office on January 3, 1949, after taking the loyalty oath required of him by section 600 of Revised Laws of Hawaii 1945, as amended by Act 131 of Session Laws of Hawaii 1945, as well as his oath of office; that during his term of office the respondent on December 29, 1949, took a new loyalty oath as required to be taken before January 1, 1950, by a further amendment of section 600, *supra* (Act 137, S. L. H. 1949), such new oath containing a statement of fact* not contained in the old; that as to that statement therein the respondent swore falsely and did so "in violation of the intent and purpose of chapter 13 as amended"; that the act of so swearing falsely not only "was an act of malfeasance in office" but "was a misrepresentation of a material fact" upon which the City and County thereafter relied to pay, and otherwise would not have paid, compensation for his services in the office of supervisor; that the city and county attorney is authorized and directed to remove the respondent from office by virtue of section 604, *supra.*

Shorn of conclusions, the gist of the charge made by the petition against the respondent is his alleged act of swearing falsely to the statement contained in the new loyalty oath while taking that oath, which is required of him by chapter 13 of Revised Laws of Hawaii 1945 in the provisions of section 600 as amended by Act 137, Session Laws of Hawaii 1949. But admittedly the authority of the city and county attorney to bring such charge against the respondent must be derived from the provisions of section 604 of the same chapter in order for this court to have jurisdiction over the instant special proceedings of removal. The pertinent part of those provisions reads: "Any elected

*i.e., "that I am not now nor have I been at any time within the five years next preceding the taking of this oath a communist or a member of the communist party."

6

county officer who shall fail or refuse to take * * * the oath * * * prescribed and in the manner and time provided in this chapter, shall be immediately removed from office in the manner provided in section * * * 6569 * * *; provided, however, that it shall not be necessary to charge any such officer failing or refusing to take * * * the said oath * * * on a petition of citizens and voters or legal voters, but that any such officer shall be so charged by the county attorney and provided further that the several county attorneys are hereby authorized and directed immediately to institute removal proceedings against any such officers failing or refusing to take * * * the oath prescribed by this chapter."

The applicable and controlling part of chapter 13 not only requires "all persons holding any office or employment in the government of the Territory or any county thereof" to take the new loyalty oath, but prescribes the form and terms of that oath and the method of procedure and time for its taking, the method being to take it "in writing," "in duplicate" and "before the officer administering the same" and the time being "before January 1, 1950." That part is section 600 as amended by Act 137, Session Laws of Hawaii 1949. The chapter thus provides "the manner and time" for the taking of the "prescribed" oath to which section 604 thereof refers as applied to an elected county officer holding office before January 1, 1950, and subject to removal immediately thereafter. It is apparent therefrom that section 604 so applied in setting forth the specific cause for removal operates in conjunction with section 600 as amended to make such cause readily discernible to the county attorney *eo instante* after January 1, 1950.

Applying the plain provisions of section 604 as amplified by those of section 600, as amended, to the allegations of fact in the petition on the assumption that such allegations are true for the purpose of considering the motion, it is evident that the respondent took the new loyalty "oath

\* \* \* prescribed and in the manner and time provided in this chapter" pursuant to the applicable and controlling part thereof and did not "fail or refuse" to do so, the petition affirmatively alleging that the respondent took such oath on December 29, 1949, within the specified time "before January 1, 1950" and demonstrating by incorporating as a part of the petition a photostatic reproduction of the oath as taken by him that it was taken in the "prescribed" form and terms, "in writing" and "before the officer administering the same," but remaining silent as to whether or not he took the oath "in duplicate" as further required of him. From such silence on the part of the petition, however, it must be presumed that he also complied with the requirement of a duplicate taking, there being nothing to the contrary. As a matter of pleading, therefore, the petition, although alleging reprehensible misconduct of a criminal nature, does not make the charge of any "failing or refusing" to take the oath within the purview of section 604, nor does it allege any facts constituting the specific cause for removal set forth in that section, which would authorize the city and county attorney to institute removal proceedings against the respondent immediately after January 1, 1950, so as to invoke this court's jurisdiction.

The city and county attorney, nevertheless, contends that the allegation of a taking of the oath while swearing falsely to one of its statements of fact "in violation of the intent and purpose of chapter 13 as amended" constitutes in effect an averment of a failure, ordinarily not discernible from its nature immediately after January 1, 1950, to take the oath "in the manner \* \* \* provided in this chapter." Assuming but without deciding that such a failure is sufficiently averred as a matter of pleading to invoke jurisdiction, this court in view of the public importance of the question presented by the county attorney will consider briefly his argument thereon and further consider the pro-

visions of the chapter in order to arrive at the legislative intent manifested therein. He argues that the word "manner" as employed in section 604 to describe the specific cause for removal must be construed liberally beyond its ordinary meaning to include an act of perjury committed while following the orderly procedure required of a public officer by the chapter. He prefaces such argument upon the theory that the legislature in requiring that the prescribed oath be taken expected it to be taken truly as to everything contained in it. He concludes therefrom that an act of swearing falsely to a part of the oath renders the actual taking of that oath a nullity in the eyes of the law and therefore such act becomes a failure to take the prescribed oath "in the manner * * * provided in this chapter." But he cites no authority and points to no language of the legislature to support such argument, theory or conclusion, nor has this court been able to find any which do. On the contrary, it finds the position taken by him to be unfounded in the law and unwarranted by the language of the legislature.

Section 604 of chapter 13, as amended, is manifestly for the public benefit. With equal clarity, however, it grants a very drastic remedy in authorizing special proceedings that are quasi criminal in character for the removal of elected public officers. Consistent therewith it is noteworthy that this court in considering the proceeding, authorized by a former statute of comparable import, stated that "* * * a majority of the Justices felt * * * the proceeding was of a criminal nature, in that the result would be removal from office * * *." (*In re Wundenberg,* 9 Haw. 681, 682.) In other jurisdictions statutes of the same category governing the removal of public officers whenever the method of construing them is considered by the courts are without exception held to be subject to strict construction and nothing can be added to them by reference or intendment. (*Beesley*

v. *State,* 219 Ind. 239, 37 N. E. [2d] 540; *State ex rel. Fletcher* v. *Naumann,* 213 Iowa 418, 238 N. W. 93; *Tennant* v. *Kuhlemeier,* 142 Iowa 241, 120 N. W. 689; *State, ex rel.,* v. *Viner,* 119 Ohio St. 303, 164 N. E. 119. See *State* v. *Alcorn,* 78 Tex. 327, 14 S. W. 663.) In principle and reason, the same holding should be made by this court in considering the construction applicable to section 604. Nor would it be otherwise when the section is read in *pari materia* with section 601 of the chapter which deals with substantially the same specific cause as it sets forth that cause as a ground of disqualification and forfeiture rather than one for removal. Section 601 provides that "any person who shall fail or refuse to take the oath or make the affirmation prescribed within the time specified" is disqualified from continuing "to hold office" and deems such disqualified persons to have forfeited all claims for compensation thereafter. Such statutory provisions for disqualification of public officers and forfeiture of compensation are likewise subject to strict construction and not to be extended to cases not clearly within their scope, the general rule being that there is a presumption in favor of the eligibility of one who has been elected or appointed to public office. (See *McCarthy* v. *State of Arizona,* 55 Ariz. 328, 101 P. [2d] 449. Also 46 C. J. 937, § 32, n. 14 and n. 16, for collection of authorities.) Thus the same general rule of construction would be applicable to the provisions of both sections which not only provide for substantially the same cause but operate harmoniously with each other to render an elected county officer on his disqualification from continuing to hold office with a forfeiture of compensation under the provisions of one subject to immediate removal at the instance of the county attorney under those of the other.

The evident purpose for which chapter 13, as amended, was enacted is to achieve the objective of having only those persons, who have duly taken the new loyalty oath, hold

public office or employment in the territorial and county governments. This is accomplished by requiring all public officers and employees to take the oath in the form and terms prescribed in section 600 as amended, as well as in the method of procedure and within the time provided and specified in that section; by disqualifying those not complying therewith (§ 601); by subjecting those complying therewith, but "wilfully and falsely" taking the oath, to "the punishment for perjury" as an indictable offense and by forever barring them on conviction from holding any public office or employment (§ 613). Having enacted the general provisions of sections 600 as amended, 601 and 613, applicable to all public officers and employees inclusive of elected county officers, the chapter within the same broad purpose implements the objective to be achieved by enacting the special provisions of section 604, applicable only to candidates for election to county office and to elected county officers holding office. These provisions require each of such candidates to take the new loyalty oath prescribed by section 600 "at the time of filing his nomination papers" and "in triplicate, duly subscribed and endorsed" in order to have his name printed on the official ballot, and subjects each of such elected county officers, who has not complied with the chapter's general requirement for taking the prescribed oath in the manner and time provided in the chapter, to immediate removal from the office held by him at the instance of the county attorney. Section 604 thus singles out candidates for election to county office and prevents their names from being placed on the official ballot unless they take the prescribed oath in the manner and time provided in the section. It also singles out elected county officers and subjects them to immediate removal unless they have taken the prescribed oath in the manner and time provided in the chapter, the applicable part thereof being section 600 as amended by Act 137, Session Laws of Hawaii

1949. Such method of procedure so provided being exclusive (See *State ex rel. Brandt* v. *Thompson,* 91 Minn. 279, 97 N. W. 887), the specific cause for removal as set forth by the section connotes a civil disobedience, in whole or in part, against a timely following of that method of procedure, authorizing the county attorney to deprive him of further holding the office the voters elected him to hold, rather than a criminal offense committed while timely following such method but against the penal laws of the Territory, subjecting him to criminal prosecution and punishment. Nor does the word "manner" in the description of such cause as employed within the context of the section connote otherwise to include any offense of a criminal nature. That word is qualified therein by the phrase "provided in this chapter" as applied to the taking of the prescribed oath and has the same import when used for the second time within the same sentence of the section where it is qualified by the phrase "provided in section * * * 6569" as applied to the removal proceedings authorized to be instituted. It is reasonable to presume that the legislature on both occasions intended to employ such word so qualified in its ordinary meaning to denote a required method of procedure to be followed in taking the oath and in conducting the proceedings, respectively, as the case may be. Had the legislature intended that perjury in taking the prescribed oath be a cause authorizing a county attorney to institute removal proceedings against an elected county officer, it would simply have said so, the reasonable inference being that it refrained therefrom advisedly and left the prosecution of that offense to the proper authorities as indicated by the language of section 613 of the chapter wherein the legislature anticipates that some persons may "wilfully and falsely" take the oath "when required or authorized to take the same." It is patent therefrom that neither by express words nor by proper inference does it

appear that the legislature intended any affirmative act of a criminal nature, such as that charged in the petition, be a cause for removal by the county attorney. It therefore would be judicial legislation for a court to free the word "manner" from the effect of its qualifying phrase "provided in this chapter," or to enlarge its ordinary meaning beyond the method of procedure depicted in the chapter, and say that the legislature intended to go outside the provisions of the chapter so as to bring an act of perjury in taking the oath within the orbit of the specific cause for removal, where as here such crime is expressly made an indictable one under section 11511 of chapter 272 and the conviction thereof made a perpetual bar to the holding of any public office as provided by the legislature in section 613 of chapter 13, as amended. The conclusion, therefore, cannot be avoided that the legislature in qualifying the word "manner" intended to limit its meaning to the method of procedure provided in chapter 13, as amended, exclusive of any criminal offense committed in complying with the requirements of the chapter for taking the oath. This is the reasonable interpretation of the clear and unambiguous language of section 604, which requires no judicial construction even though subject to strict construction if any be necessary.

The proper exercise of the authority, given by the legislature in section 604 to a county attorney to institute removal proceedings against an elected county officer, depends upon the absence of taking a valid oath in compliance with the authority and requirements of the chapter as caused by such officer's failure or refusal to so take it. Such exercise is jurisdictional and exempts the resultant proceedings from the comparable jurisdictional requirement that a charge of "malfeasance, misfeasance, nonfeasance or maladministration in office" must be brought "by not less than one hundred legal voters within the city and

county" in order to give the supreme court jurisdiction to impeach a member of the board of supervisors as elsewhere provided by statute. (R. L. H. 1945, § 6569. See *In re Bevins*, 28 Haw. 752.) At this juncture it is pertinent to note that neither of these jurisdictional requirements is met by the averment in the petition which in effect charges the respondent with receiving compensation in office under false pretenses stemming from an initial "misrepresentation of a material fact" and with committing "an act of malfeasance in office" where as here the petition so charging him is that of the city and county attorney alone.

There is nothing to be found in the petition to show that the city and county attorney properly exercised the authority under section 604 or had any factual basis upon which to do so. Nor does it affirmatively charge the respondent with any failure or refusal to take the oath in the prescribed form, manner and time provided in chapter 13 as amended, but on the contrary, alleges a timely taking of such oath by the respondent as authorized and required of him by the chapter. The petition is, therefore, fatally defective.

Motion granted and petition dismissed.

*Y. Fukushima* for the motion.

*W. D. Godbold,* City and County Attorney, and *F. A. McKinley,* Deputy City and County Attorney, contra.