255 P.2d 604

**SCHREY et al. v. ALLISON STEEL MFG. CO.**

No. 5751.

Supreme Court of Arizona.

April 6, 1953.

284

John W. Corbin, City Atty., Glendale, Kramer, Morrison, Roche & Perry and Burr Sutter, of Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, of Phoenix, for appellee.

WINDES, Justice.

In the year 1952, the city of Glendale, Arizona, with sufficient authority, decided to have constructed a one-million-gallon elevated steel water tank and called an election for authority to issue bonds for such purpose. Authority was given, and a call for bids was duly issued. Chicago Bridge and Iron Company, a foreign corporation qualified to do business in the state of Arizona, bid $147,450, and appellee, Allison Steel Manufacturing Company, an Arizona corporation, bid $149,865, both bidders holding contractor's licenses issued by the Arizona Registrar of Contractors. The evidence shows appellee paid state and county taxes for the years 1950 and 1951 on a plant sufficient to perform the contract. Six days after the bids were opened appellee claimed a preference under the provisions of Section 56–107, A.C.A. 1939. The contract was awarded to the Chicago Bridge and Iron Company, following which appellee filed action against the

common council of the city of Glendale for a writ of mandamus to compel appellants to award it the contract. After trial a peremptory writ was directed to be issued as requested.

Appellants appeal and present five assignments of error, three of which challenge the constitutionality of Section 56–107, supra, and two thereof submit for decision the proposition that the awarding of the contract is governed by the provisions of Section 10–610, Cum.Supp.A.C.A.1939. Section 56–107 supra, so far as applicable to the problem presented reads as follows:

"Hereafter, in the letting of bids for any contract for public work to be performed on behalf of the state of Arizona, or any political subdivision thereof, and to be paid for out of public funds, * * *, bids of contractors who have not been found unsatisfactory in prior public contracts and who have paid state and county taxes within the state of Arizona for not less than two (2) successive years immediately prior to the making of said bid on a plant and equipment such as is ordinarily required for the performance of the contract for which such bid is made, or on other real or personal property in the state of Arizona equivalent in value to such plant, shall be deemed a better bid than the bid of any competing contractor who has not so paid taxes, whenever the bid of such competing contractor shall be less than five (5) per cent lower and the contractor making such bid herein provided to be deemed the better bid, shall be awarded the contract. * * *"

It is urged that this statute offends Article 2, Section 13 of the Arizona Constitution, which prohibits the enactment of any law granting any citizen or corporation other than municipal, privileges or immunities which shall not upon the same terms belong to all citizens or corporations, and that it runs contrary to Section 1 of the 14th Amendment to the Constitution of the United States which enjoins the states from abridging the privileges of citizens of the United States and requires the granting of equal protection of the laws. It will be observed that the statute under attack provides that in letting contracts for public work to be performed on behalf of the state or political subdivisions thereof, contractors who have paid state and county taxes on the plant and equipment or other property of equivalent value for two successive years immediately prior to the making of the bid are given a five per cent advantage over contractors who have not paid such taxes. The foregoing provision of the state constitution prohibits the granting of special discriminatory privileges, whereas Section 1 of the 14th Amendment to the United States Constitution enjoins the taking away or curtailing of the privileges of citizens of the United States and requires that all be given equal protection.

■ When an inequality appears, in order to ascertain whether the legislation in question violates these constitutional provisions it is essential to first determine what is the privilege abridged or special privilege granted which might appear to result in denying equal protection of the law. All discrimination or inequality is not forbidden. Certain privileges may be granted some and denied others under some circumstances, if they be granted or denied upon the same terms and if there exists a reasonable basis therefor. When presented with a law showing partiality, we are always inevitably led into the troublesome problem of classification. The principle involved is not that legislation may not impose special burdens or grant special privileges not imposed on or granted to others; it is that no law may do so without good reason. A principle which none can dispute is that a statute may be allowed to operate unequally between classes if it operates uniformly upon all members of a class, provided the classification is founded upon reason and is not whimsical, capricious, or arbitrary. Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292.

■■ The cases are virtually unlimited upon the question of what is or is not legitimate classification. In an effort to sustain legislation if possible, the court, disregarding matters of exclusive legislative concern such as the necessity, wisdom, propriety, or expediency of the law and looking only to the constitutional power of the lawmaking body, will attempt to discover the basis, if any, for a challenged disparity. In looking to the object of the Act, if it is found that there is a difference between the class favored and others not included therein and that such difference bears a natural and reasonable connection with the object of the Act, such Act will not be stricken down. In judging the reasonableness of the foundation for classification, if the court is in doubt as to whether there is or is not a reasonable basis, such doubt will be resolved in favor of the constitutionality of the law. These principles are fundamental. 12 Am.Jur., Constitutional Law, §§ 476 to 482, inclusive.

■ The plain object of this Act is the construction of public works and the securing of contracts therefor. It provides the method and procedure whereby public funds shall be expended for public property. It is a matter in which the public and the public only have a primary interest. It prescribes who and under what conditions this work shall be done. Appellants contend that everyone must be allowed to enter into these contracts on the same basis; that a distinction based upon the difference between a taxpaying and a non-taxpaying bidder for these public contracts exceeds legislative power. With this we cannot agree. Such a proposition necessarily rests upon the assumption that the right to contract for the performance of public works is absolute and beyond state power to limit. Generally the right to

contract as one wishes is entitled to constitutional protection, but this is a qualified right, and where the public interest is involved it may be restricted if there is a reasonable basis for such restriction. State v. Senatobia Blank Book & Stationery Co., 115 Miss. 254, 76 So. 258. Heim v. McCall, 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206.

■ The legislature has the right to regulate the letting of contracts for public works to be constructed by the state or its political subdivisions. State v. Senatobia Blank Book & Stationery Co., supra [115 Miss. 254, 76 So. 260], wherein the law limited the right to award printing contracts to worthy and capable printing establishments in the state actually engaged in the printing business and paying taxes thereon in the state. In holding the law constitutional, the court said:

"That the Legislature has the power to enact laws regulating the letting of contracts for its printing and that of its subdivisions is not and cannot be questioned. That the county is a subdivision of the state is also not questioned.

"The first question, then, is: Does this act violate any of the enumerated provisions of the federal Constitution? The act in question does not attempt to regulate any contracts save those of the state itself and its subdivisions, which are, upon the last analysis, contracts of the state. In other words, by this act the state is but regulating and saying with whom it will make its own contracts for work of this character. It is well also to bear in mind that an individual has a perfect right to make a contract with any one whom he pleases. It follows, also, that the state has a right to make a contract with any one whom it pleases unless it contravenes in some way either the federal or the state Constitution. * * *"

This case was subsequently approved in Dixon-Paul Printing Co. v. Board of Public Contracts, 117 Miss. 83, 77 So. 908, 909, wherein the court said, "We believe that the power to regulate carries the power to prescribe the qualifications which the bidder must possess." Appellants would have us construe the Arizona Constitution as taking from the state this power to regulate in that respect and placing the rights of bidding on public contracts in the same category as contracts between citizens who deal with each other in matters with which the public is not concerned. We cannot subscribe to such a principle.

■ We believe and therefore hold that the state, in contracting for the expenditure of tax money, had a reasonable basis for granting a five per cent preference to contractors who, through the payment of taxes for two years, have made a contribution to the funds from which they are to reap a benefit. The legislature had a right to believe, and for all we know it may be

a fact, that the interests of the state and the political subdivisions thereof will be better served through this plan than otherwise. In any event, the distinction is not capricious nor arbitrary.

Appellants, while admitting they have no authorities exactly in point, cite many cases where various statutes have been stricken down as discriminatory. We have no occasion to dispute the validity of these authorities, for they are based upon the proposition that the legislation involved in the respective cases was arbitrary. Considerable stress is placed upon Prescott Courier, Inc., v. Moore, 35 Ariz. 26, 274 P. 163, as compelling us to condemn this law. There is no similarity between the situation there and here. We there held that the board of supervisors in letting a contract for printing did not comply with the requirements of the statute in that it limited the right to bid to newspapers, thereby depriving others who were equally qualified of the right to submit bids thereon. We do not go so far as to say that merely because the contract is public and calls for the expenditure of public funds the legislature may, without any restraint and without reasonable basis, grant special preferences. We merely hold that under the circumstances here presented there was a reasonable basis for the privilege granted, and under the statute all who fell within the class, whether foreign or domestic, were given the same privilege upon the same terms.

■ We are asked to say that the granting of the privilege amounts to a donation or grant to the taxpaying contractor and therefore runs contrary to Article 9, Section 7 of the Arizona Constitution. It is not a matter of grant. A definite burden is imposed in the form of the payment of state and county taxes from which the state and counties receive a definite value. It is even possible that the value received exceeds the concession allowed. The cases cited by appellants holding certain statutes therein contrary to this provision of the constitution were cases where the concession given was a mere gratuity with no possible value enuring to the state or its political subdivisions. We hold there is no violation of Article 9, Section 7 of the constitution.

■ There is no merit to the contention that the statute clashes with Article 4, Part 2, Section 19 of the Arizona Constitution, which forbids the enactment of special laws. A law is not special which operates alike upon all of a given class. Hunt v. Mohave County, 18 Ariz. 480, 162 P. 600. Likewise the thought advanced that both Article 9, Section 1, and Article 4, Part 2, Section 13 of the Arizona Constitution, are offended is without valid foundation.

■ The thought is advanced that the law is so indefinite and uncertain that it is incapable of enforcement. All that is required is that the public agency contracting determine whether such taxes have been paid and proceed accordingly. This pre-

sents no insurmountable difficulty. There is no merit to this contention.

Two assignments of error are that Section 10–610, supra, is the applicable law for the reasons that it is a later enactment, and is a special as distinguished from a general law. The validity of this contention depends upon whether there be a conflict between Section 10–610, supra and Section 56–107, supra.

In analyzing this problem it is interesting to observe some of the history of our legislation upon this subject. Section 10–610, supra, providing for the letting of contracts when municipalities have issued bonds for the construction of buildings and requiring the contract to be let to the lowest responsible bidder, was originally enacted in 1912. In 1919, Section 9–106 Cum.Supp. A.C.A. 1939, providing for the letting of contracts for the construction of any public building or structure, was enacted. This law likewise provides that the contract shall be let to the lowest responsible bidder. These two statutes have been re-enacted, the last time in 1950, both re-enactments being on the same day. Chapters 22 and 23, Laws of 1950, First Special Session. Throughout the respective enactments there has been no change in the provision that the bid must be awarded to the lowest responsible bidder. When the legislature was passing these amendments it had full knowledge of the existence of Section 56–107, supra, which was enacted in 1933,

and had it intended to abolish or affect the force thereof it would undoubtedly have said something indicating such intention. In fact, it would appear that by re-enacting the laws without changing the provision requiring that the contract be let to the lowest responsible bidder, with knowledge that the 1933 Act was in effect, the legislature intended that the provision of the 1933 law continue to operate. These three laws, all relating to the letting of contracts for public work, are in pari materia and must be construed together, giving effect to all the provisions if reasonably possible. We think there is no irreconcilable conflict between them. Section 56–107, supra, is merely saying that in determining who shall be considered the lowest responsible bidder there must be taken into consideration the five per cent differential in favor of taxpaying bidders. In Dixon-Paul Printing Co. v. Board of Public Contracts, supra, the constitution provided that the contracts must be given to the lowest responsible bidder, the statute provided that no bidder who was a nonresident of the state should be regarded or treated as a responsible bidder, and the court held that the legislature had a right to define the term "responsible bidder" if the distinction be reasonable.

We hold, therefore, that both Section 10–610, supra, and Section 56–107, supra, are applicable to the situation. The contracts must be let to the lowest responsible bidder,

giving effect to the five per cent differential in determining who is such bidder.

Judgment affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concur.