397 P.2d 944

Barbara **ELFBRANDT**, for herself and others similarly situated, Appellants,

v.

Imogene R. **RUSSELL**, L. E. **Bool** and Martha L. **Elliott**, members of the Board of Trustees of Amphitheater Elementary School District No. 10, Pima County, State of Arizona, et al., Appellees.

No. 7406.

Supreme Court of Arizona.

En Banc.

Dec. 30, 1964.

Rehearing Denied Feb. 17, 1965.

W. Edward Morgan, Tucson, for appellants.

Robert W. Pickrell, Atty. Gen., and Philip M. Haggerty, Asst. Atty. Gen., Phoenix, for appellees.

S. Leonard Scheff and Robert J. Hirsh, Tucson, for amicus curiae Arizona Civil Liberties Union.

Amelia D. Lewis, Sun City, and Jay Dushoff, Phoenix, for amicus curiae Arizona Civil Liberties Union (Northern Arizona Chapter).

STRUCKMEYER, Justice.

This case arises out of the refusal of Barbara Elfbrandt, a teacher in the public schools at Tucson, Arizona, to subscribe to the oath required by the Arizona Communist Control Act of 1961 of all public officers and employees. In our decision, Elfbrandt v. Russell, 94 Ariz. 1, 381 P.2d 554, May 1, 1963, we summarily disposed of the issue of the asserted vagueness in the Arizona act with the statement that it "does not have the unconstitutional vice of vagueness and indefiniteness in placing an accused on trial for an offense, the na-

ture of which he is given no fair warning, for punishment is restricted to specified acts knowingly and wilfully committed."[1] The Supreme Court of the United States, by Per Curiam order dated June 15, 1964, vacated the judgment and remanded the cause to this Court "for further consideration in light of Baggett v. Bullitt [377 U.S. 360], 84 S.Ct. 1316 [12 L.Ed.2d 377]."

◼ The Arizona oath,[2] with insignificant changes, has been used in the Territory and the State of Arizona for over one hundred years. An oath of allegiance in part couched in nearly identical language is required by Congress of those seeking citizenship by naturalization.[3] Plainly, the Arizona oath is no more than a restatement of the duties of citizenship, an express engagement to which all who are afforded the protective cloak of the Constitution and laws of this country and state are irrevocably bound.

The Washington oath[4] did not by its language confine the taker to the undertakings of citizenship and the faithful and impartial discharge of the duties of an office. It offended because it "is not open to one or a few interpretations, but to an indefinite number" and that only "extensive adjudications, under the impact of a variety of factual situations, would bring the oath within the bounds of permissible constitutional certainty." Baggett v. Bullitt, 377 U.S. 360, 378, 84 S.Ct. 1316, 1326, 12 L.Ed. 2d 377.

◼ We recognize that the words "true faith and allegiance", "defend", and "faithfully and impartially" in the context in which they are used range high in the level of abstractions. But Arizona's gen-

1. 94 Ariz. 1, 8, 381 P.2d 554, 558.
2. "State of Arizona, County of _____ I, _____ do solemnly (type or print name) swear (or affirm) that I will support the Constitution of the United States and the Constitution and laws of the State of Arizona; that I will bear true faith and allegiance to the same, and defend them against all enemies, foreign and domestic, and that I will faithfully and impartially discharge the duties of the office of _____ (name of office) _____ according to the best of my ability, so help me God (or so I do affirm)." A.R.S. § 38-231, subs. G, as amended Laws 1961, Ch. 108, § 5.
3. "(a) A person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath (1) to support the Constitution of the United States; * * * (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; * * *." 66 Stat. 258, 8 U.S.C.A. § 1448.
4. "I solemnly swear (or affirm) that I will support the constitution and laws of the United States of America and of the State of Washington, and will by precept and example promote respect for the flag and the institutions of the United States of America and the State of Washington, reverence for law and order and undivided allegiance to the government of the United States." Wash.Laws 1931, c. 103, § 1.

eral perjury statute, A.R.S. § 13–561, has no application for the act contains an enumeration of the offenses punishable criminally as perjury, A.R.S. § 38–231, subs. E.[5] A statute which enumerates the subjects or things upon which it is to operate will be construed as excluding from its effect all those not especially mentioned. Lewis v. Industrial Commission, 93 Ariz. 324, 380 P.2d 782. No criminal act is committed under the specific language of the oath if the taker is unfaithful, partial, divides his allegiance or fails to defend the Constitution and laws against all enemies. The test is wholly subjective, binding only to the extent of the individual's conscience.

By A.R.S. § 38–231, subs. G. public officers and employees who take the oath promise, under penalty of perjury, that they are not knowingly or wilfully engaged in

and will not in the future during their terms of office knowingly or wilfully engage in the conduct specified in A.R.S. § 38–231, subs. E:

1. Commit any act to overthrow by force or violence the government of this state or any of its political subdivisions;

2. Aid in the commission of any act to overthrow by force or violence the government of this state or any of its political subdivisions;

3. Advocate the overthrow by force or violence of the government of this state or any of its political subdivisions;

4. Become knowingly and wilfully a member of the Communist Party of the United States or its successors or any of its subordinate organizations or any other organization having for one

---

5. "Any officer or employee as defined in this section having taken the form of oath or affirmation prescribed by this section, and knowingly or wilfully at the time of subscribing the oath or affirmation, or at any time thereafter during his term of office or employment, does commit or aid in the commission of any act to overthrow by force or violence the government of this state or of any of its political subdivisions, or advocates the overthrow by force or violence of the government of this state or of any of its political subdivisions, or during such term of office or employment knowingly and wilfully becomes or remains a member of the communist party of the United States or its successors or any of its subordinate organizations or any other organization having for one of its purposes the overthrow by force or violence of

the government of the state of Arizona or any of its political subdivisions, and said officer or employee as defined in this section prior to becoming or remaining a member of such organization or organizations had knowledge of said unlawful purpose of said organization or organizations, shall be guilty of a felony and upon conviction thereof shall be subject to all the penalties for perjury; in addition, upon conviction under this section, the officer or employee shall be deemed discharged from said office or employment and shall not be entitled to any additional compensation or any other emoluments or benefits which may have been incident or appurtenant to said office or employment." A.R.S. § 38–231, subs. E, as amended Laws 1961, Ch. 108, § 5.

of its purposes the overthrow by force or violence of the government of the State of Arizona or any of its political subdivisions and prior to becoming a member of such organization, or organizations, had knowledge of the unlawful purpose of the organization, or organizations;

5. Remain knowingly and wilfully a member of the Communist Party of the United States or its successors or any of its subordinate organizations or any other organization having for one of its purposes the overthrow by force or violence of the government of the State of Arizona or any of its political subdivisions and prior to becoming a member of such organization, or organizations, had knowledge of the unlawful purpose of the organization, or organizations.

The commission of any of these acts at the time of taking the oath or thereafter by a public officer or employee is declared to be a felony punishable in the same manner as perjury. Were we to consider, which we do not, any part of A.R.S. § 38–231, subs. E unconstitutional, the oath provided by §

38–231, subs. G would not fall for the act provides that if any provision is held invalid, the invalidity shall not affect other provisions which can be given effect.

██  If we correctly understand the opinion of the Supreme Court of the United States in Baggett, it is the susceptibility of a statute to the interpretation of required forswearing of an undefinable variety of "guiltless knowing behavior" which is condemned, Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285. In this we think there is a vital distinction between the Washington act [6] and the Arizona act. Arizona does not seek to punish one who advises, teaches or abets or advocates by any means any person to commit or aid in the commission of any act intended to overthrow or alter, or to assist in the overthrow or alteration, of the constitutional form of government by revolution, force or violence. Arizona punishes those who commit or aid in the commission of an act to overthrow the government by force or violence. The act cannot be innocently committed or aided for the legislature has provided that it must be done "know-

6. Washington required public employees to swear they were not a subversive person as defined by statute:

"'Subversive person' means any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the state of Washington, or any political subdivision of either of them by revolution, force, or violence; or who with knowledge that the organization is an organization as described in subsections (2) and (3) hereof, becomes or remains a member of a subversive organization or a foreign subversive organization." Rev. Code Wash. § 9.81.010(5).

ingly or wilfully"; that is, that it be voluntary and purposeful and not because of a mistake, inadvertence or for any innocent reason or that the act be done with an evil motive to accomplish that which the statute condemns.

■ By A.R.S. § 13–131, in every crime or public offense there must exist a union or joint operation of act and intent or criminal negligence. But the crime of committing or aiding in the commission of an act to overthrow the government of the state or any of its political subdivisions cannot be completed if accompanied only by a generalized intent to commit an act. The language of subs. E, A.R.S. § 38–231, requires that it be read as committing or aiding in the commission of an act *in an attempt* to overthrow the government or any of its political subdivisions. The overt act or the aiding therein must be with actual intent to accomplish the result forbidden, State v. Mandel, 78 Ariz. 226, 278 P.2d 413, and a specific intent to overthrow must exist. It must be an intent in fact which cannot be implied or presumed and must be proved by evidence or facts other than those establishing the overt act. Cf. People v. Snyder, 15 Cal.2d 706, 104 P.2d 639.

■ Moreover, the act must be such as will apparently result in the usual and natural course of events, if not hindered by extraneous causes, in the overthrow of the government by force and violence. Prep-

aration alone is not enough; there must be some appreciable fragment of the crime committed, and it must be in such progress that it will be consummated unless interrupted by circumstance independent of the will of the attempter, State v. Mandel, supra. Cf. People v. Camodeca, 52 Cal.2d 142, 338 P.2d 903.

■■ In this state there is no distinction between accessories before the fact and principals. A.R.S. § 13–138. All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid or abet in its commission or, not being present, have advised and encouraged in its commission, are principals. A.R.S. § 13–139. We have construed the aiding required by this statute as some positive act of physical or moral force joining with that of the perpetrator of the crime and producing the result. State v. Martin, 74 Ariz. 145, 245 P.2d 411. The aiding, made punishable by subs. E, is the same as that which would make an accessory before the fact a principal under § 13–139; that is, if the aider is present he must have assisted in commission of the overt act or, if not being present, have advised *and* encouraged its commission. In a crime where a specific intent is an element there can be no innocent aiding. Acker v. State, 26 Ariz. 372, 226 P. 199.

■ Since both the act and the aiding referred to in the statute must be in at-

tempts with the specific intent to overthrow the government, the Arizona statute § 38–231, subs. E is not afflicted with the many uncertainties in advising, teaching or associations found potentially punishable in Baggett v. Bullitt, supra. Nor does it reach endorsements or support for Communist candidates for office nor a lawyer who represents the Communist Party, or its members, nor journalists who defend the Communist Party, its rights, or its members. Such conduct is neither an act nor in aid of an act attempting to overthrow the government by force and violence.

It is our conclusion that the portions of the Arizona act here considered do not forbid or require conduct in terms so vague that men of common intelligence must necessarily guess at the meaning and differ as to their application.

The judgment of the superior court is ordered reinstated.

UDALL, C. J., LOCKWOOD, V. C. J., and SCRUGGS, J., concur.

BERNSTEIN, Justice (dissenting).

In my concurring opinion in the original decision in this case I stated that the statute would be constitutional only if it provided for a hearing which complied with the requirements of procedural due process and at which the State had the burden of proving the disloyalty of those excluded from public employment. My analysis of Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377, now convinces me that such a hearing could not save the constitutionality of the Arizona statute.

The majority ignores the troublesome clauses of A.R.S. § 38–231, subd. E. These are the provisions of the Act which prohibit one from becoming or remaining a member of certain organizations. One of its provisions prohibits membership in " * * * any other organization having for *one* of its purposes the overthrow by force or violence of the government of the state of Arizona or any of its political subdivisions * * * " (Emphasis supplied) Let us consider a scientist, a teacher in one of our universities. He could not know whether membership is prohibited in an international scientific organization which includes members from neutralist nations and Communist bloc nations—the latter admittedly dedicated to the overthrow of our government and which control the organization—even though access to the scientific information of the organization is available only to its members.

"Is it subversive activity, for example, to attend and participate in international conventions of mathematicians and exchange views with scholars from Communist countries?" Baggett v. Bullitt, 377 U.S. at 369, 84 S.Ct. at 1321.

Though all might agree that the principal purpose of such an organization is scientific, the statute makes his membership a crime if any subordinate purpose is the overthrow of the state government. The vice of vagueness here is that the scientist cannot know whether membership in the organization will result in prosecution for a violation of § 38–231, subd. E or in honors from his university for the encyclopedic knowledge acquired in his field in part through his membership.

"It will not do to say that a prosecutor's sense of fairness and the Constitution would prevent a successful perjury prosecution for some of the activities seemingly embraced within the sweeping statutory definitions. The hazard of being prosecuted for knowing but guiltless behavior nevertheless remains. 'It would be blinking reality not to acknowledge that there are some among us always ready to affix a Communist label upon those whose ideas they violently oppose. And experience teaches us that prosecutors too are human.'" Baggett v. Bullitt, 377 U.S. at 373, 84 S.Ct. at 1323.

In such a case even approval of his membership in the organization by the United States State Department could not assure him that he would not be prosecuted, as this is a state criminal statute.

"Those with a conscientious regard for what they solemnly swear or affirm, sensitive to the perils posed by the oath's indefinite language, avoid the risk of loss of employment, and perhaps profession, only by restricting their conduct to that which is unquestionably safe." Baggett v. Bullitt, 377 U.S. at 372, 84 S.Ct. at 1323.

Free association may not be so inhibited.

In view of the direction of the United States Supreme Court that we reconsider this case in the light of what was said in Baggett, I do not discuss the violence done by this statute in hampering the right of free association guaranteed by the First Amendment.

I respectfully dissent.